**AETNA CASUALTY AND SURETY COMPANY, Plaintiff,**

v.

**Harry J. DEITRICH, administrator of the Estate of Judy A. Deitrich, Deceased, and Joann M. Deitrich, a minor by Harry J. Deitrich, Parent and Natural Guardian, Defendants.**

Civ. A. No. 1:CV–92–707.

United States District Court, M.D. Pennsylvania.

Oct. 15, 1992.

Dennis J. Bonetti, Peters and Wasilefski, Harrisburg, Pa., for plaintiff.

David B. Dowling, Rhodes & Sinon, Harrisburg, Pa., for defendants.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs have filed an opposition brief, Defendants have filed a reply brief, and Plaintiffs have filed a surreply brief. The motion is now ripe for consideration.

*Background*

The captioned action arose from a two car accident which occurred on April 30, 1987. Judy A. Deitrich was a front seat passenger in an automobile driven by Nancy Deiter. Ms. Deitrich was killed when their vehicle collided with one driven by George S. Kotkiewicz.

In July of 1987, Ms. Deitrich's estate and Ms. Deiter's insurance company settled for the policy limit of $50,000. Ms. Deitrich was insured by Aetna Casualty and Surety Company ("Aetna"), the policy of which provided for underinsured motorist benefits of $500,000. However, Aetna did not give its consent to the settlement between the Deitrich estate and Ms. Deiter's insurance company, and, citing a consent-to-settle provision in the policy, refused to com-

pensate Defendants with the underinsurance payments they demanded.

On July 10, 1990, Defendants requested arbitration, as provided in the insurance policy. On August 2, 1991, Aetna requested that the arbitration be stayed, and filed a declaratory judgment action in this court. On October 16, 1991, this court ordered arbitration. *Aetna Cas. and Sur. Co. v. Deitrich,* 775 F.Supp. 836 (M.D.Pa.1991).

An underinsured motorist arbitration hearing was held on November 22, 1991. On or about April 25, 1992, the arbitrators awarded the Deitrich estate $420,000 less the $50,000 already received from the insurer.

*Discussion*

I. 12(b)(6) Motion

A Rule 12(b)(6) motion tests the legal foundation of the plaintiff's claims; it serves not to question the plaintiff's facts. *United States v. Marisol, Inc.,* 725 F.Supp. 833, 836 (M.D.Pa.1989). The Court must determine if the plaintiff's claim would fail even if all facts alleged in the complaint were true. *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The Rule 12(b)(6) movant carries the burden of showing this legal insufficiency of the claims asserted. *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980).

To prevent unwarranted dismissal of the plaintiff's claims, the allegations put forth in the complaint are taken as true and inferences from those facts are viewed in the light most favorable to the plaintiff. *Mortensen,* 549 F.2d at 891; *Truhe v. Rupell,* 641 F.Supp. 57, 58 (M.D.Pa.1985). However, "conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true." *Pennsylvania House, Inc. v. Barrett,* 760 F.Supp. 439, 449–50 (M.D.Pa.1991) (citing *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–102). A Rule 12(b)(6) motion will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102.

II. Standard of Review

In the captioned case, the insurance policy in question provided the following:

ARBITRATION—If we and a **covered person** do not agree:

1. Whether that person is legally entitled to recover damages from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle;** or

2. On the amount of payment which may be owed under this insurance;

either party may make a written demand for arbitration in accordance with the provisions of the Pennsylvania Uniform Arbitration Act. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that the selection be made by a judge of a court having jurisdiction.

Complaint, Exhibit E. Citing this provision, this court ordered the parties to arbitration, following their dispute over Aetna's liability. *Aetna Cas. and Ins. Co. v. Deitrich,* 775 F.Supp. 836 (M.D.Pa.1991). This court determined that it "must assume the arbitrators will apply the law and in the absence thereof, Aetna can appeal. *See* 42 Pa.Cons.Stat.Ann. § 7302." *Id.* at 839 (citations omitted). Plaintiff and Defendant now disagree over whether the standard provided under § 7302 governs this court's review of the arbitrators' award. For the reasons that follow, this court has determined that it was erroneous in previously concluding that § 7302 governs the applicable standard of review in the captioned case.

Arbitration is governed by two separate spheres—statutory and common law. Statutory arbitration is presently provided for in the "Uniform Arbitration Act" of October 5, 1980 found at §§ 7301–7320 of the Pennsylvania Judicial Code. Statutory arbitration principles only apply where the agreement to arbitrate is written and expressly provides for statutory arbitration. 42 Pa.Cons.Stat.Ann. § 7302(a). Otherwise, arbitration is presumed to be gov-

erned by common law arbitration principles. 42 Pa.Cons.Stat.Ann. § 7302(a).

The 1980 arbitration statute replaces a now repealed statute, the Uniform Arbitration Act of 1927, 5 P.S. § 161, *et seq.*, which provided:

§ 171 Modifying or correcting award, grounds

In either of the following cases the court shall make an order modifying or correcting the award upon the application of any part to the arbitration:

. . . .

(d) Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict. . . .

With its "against the law" standard of review, the 1927 Act provides relatively broad powers to vacate an arbitration award.

This 1927 Act has been replaced by two statutory standards. First, statutory arbitration is ordinarily governed by 42 Pa. Cons.Stat.Ann. § 7314, which provides for vacating an award for those reasons provided by common law along with a few other clearly specified grounds; this is a much more narrow standard of review than that provided by its predecessor since an arbitration award can no longer be vacated for being legally erroneous.

Second, statutory arbitration may be governed by 42 Pa.Cons.Stat.Ann. § 7302 which provides:

(d) Special application—

(1) Paragraph (2) shall be applicable where:

. . . .

(iii) Any person has been required by law to submit to or to agree to submit a controversy to arbitration pursuant to this subchapter.

(2) Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, *modify or correct the award where the award is contrary to law* and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

(emphasis added). Like the 1927 Act, this standard of review is quite broad, permitting a court to vacate an arbitration award if it is based on shaky law.

However, this section only applies in two situations: As explained by § 501(b) of Act 1980, Oct. 5, P.L. 693, No. 142 (which is cited in the "Application" following § 7302):

The provisions of 42 Pa.C.S. § 7302(d)(2) (relating to special application) shall be applicable to any nonjudicial arbitration pursuant to:

(1) An agreement made prior to the effective date of this act which expressly provides that it shall be interpreted pursuant to the law of this Commonwealth and which expressly provides for statutory arbitration.

(2) An agreement heretofore or hereafter made which expressly provides for arbitration pursuant to the former provisions of the act of April 25, 1927 (P.L. 381, No. 248), relating to statutory arbitration.

As *Popskyj v. Keystone Insurance Co.,* 388 Pa.Super. 429, 565 A.2d 1184, 1190 (1989), *allocatur denied,* 525 Pa. 602, 575 A.2d 567 (1990) explained,

the legislature recognized the inequity and chaos likely to result by imposing the 1980 Act's limitations as to the review of awards, upon parties who had expressly agreed to the rules, and broad scope of review, provided in the 1927 Act. To avoid this result, the legislature included the above historical note, which specified two instances which, without more, shall be viewed as falling within the parameters of § 7302(d)(1)(iii), as involving parties legally bound to arbitrate subject to broad judicial review: (1) agreements to arbitrate made prior to December 4, 1980, the effective date of the 1980 Act, expressly providing for arbitration pursuant to the laws of the Commonwealth; and (2) agreements to arbitrate, made either before or after

1980, expressly providing for arbitration under the 1927 Act.

▮ *Popskyj* laid out the three types of cases that could come within the ambit of § 7302(d). First, the broad review of § 7302(d) is appropriate in "cases in which the accident precipitating the cause of action occurred pre–1980, and the parties' agreement thereby either expressly or implicitly provided for arbitration under the 1927 Act." *Id.*, 565 A.2d at 1191 (citations omitted). The policy in the captioned case did not implicitly provide for statutory arbitration under the 1927 Act, as neither the accident nor the endorsement occurred prior to 1980. Thus, it does not fall within the first set of cases governed by § 7302(d).

Second, § 7302(d) applies in "cases in which the insurance agreement was made prior to December 4, 1980, and contained language providing that the law of the Commonwealth would apply, in accordance with part (1) of the historical note." *Id.*, at 1191 (citations omitted). It appears from Appendix A of the Motion to Dismiss that the endorsement date of the arbitration clause, part of "Important Notice," is April 1986. Therefore, the captioned case does not fall within the second sphere of § 7302(d) cases.

Third, § 7302(d) applies to "cases arising either before or after December 4, 1980, in which the insurance agreement specifically provided for arbitration under the 1927 Act, in accordance with part (2) of the historical note...." *Id.*, at 1191 (citations omitted). *Accord, Geisler v. Motorists Mut. Ins. Co.*, 382 Pa.Super. 622, 556 A.2d 391 (1989); *Selected Risks Ins. Co. v. Thompson*, 363 Pa.Super. 34, 525 A.2d 411 (1987), *aff'd in part, rev'd in part on other grounds*, 520 Pa. 130, 552 A.2d 1382 (1989); *Ragin v. Royal Globe Ins. Co.*, 315 Pa.Super. 179, 461 A.2d 856 (1983). Like the language in *Popskyj*, the language of the policy in the captioned action does not specifically refer to the 1927 Act, but, rather, refers generally to the "Pennsylvania Uniform Arbitration Act" (which could refer to either the 1927 or the 1980 Act). Without more, there is no indication that the policy in the captioned case is governed by the broad standard of review provided by the 1927 Act.

Utilizing this three prong standard of review, the court in *Popskyj*, faced with the question whether § 7302 ("contrary to law" review) or § 7314 (common law principles) governed the scope of review, determined that § 7302(d) did *not* apply, since the case fell within none of the three analytical categories.

Plaintiff asserts, however, that the *Popskyj* analysis was rejected in *Bowdren v. Aetna Life and Casualty*, 404 Pa.Super. 595, 591 A.2d 751 (1991), *allocatur denied*, 529 Pa. 644, 602 A.2d 855 (1992). Plaintiff maintains *Bowdren* came to a different conclusion—that § 7302(d) *did* apply. *Popskyj* was decided prior to *Bowdren*. Since two of the three panel judges in *Bowdren* also heard *Popskyj*, Plaintiff believes this court should follow *Bowdren*, not *Popskyj*.

In *Bowdren*, the court had to choose between applying the common law standard of review (§ 7341) or the statutory one (§ 7302) to an arbitrators' award in favor of an injured appellant. The appellant filed a petition to confirm, vacate, or modify the award. The court determined that the policy providing for arbitration "in accordance with the provisions of the Pennsylvania Uniform Arbitration Act" constituted an express provision for statutory arbitration and that this required application of § 7302 with its "contrary to law" standard of review. *Id.* 591 A.2d at 754.

Defendants maintain that the policy must have met one of the conditions that § 501(b) of Act 1980 requires before § 7302(d) is applicable. Defendants' brief at 5–6. Thus, they assert that either the contract in *Bowdren* must have clearly specified use of statutory arbitration under the 1927 act or that the endorsement was effective before 1980 when the § 7314 act was passed.

On the other hand, Plaintiff argues that the policy at issue in *Bowdren* did not make reference to the broader 1927 standard of review, and that contrary to Defendants' argument that the *Bowdren* policy endorsement policy must have become effective prior to the 1980 Act, the record in

*Bowdren* provided by Plaintiff indicates an endorsement date of October, 1984. Plaintiff's brief at 9.

Nonetheless, even assuming Plaintiff is correct that the policy in *Bowdren* was properly governed by § 7302(d), without falling within one of the two prongs mandated by § 501(b) of Act 1980, the court in *Bowdren* provided absolutely no rationale for its decision. The court merely compared the language in the policy before it with the language of policies in other cases and determined that the wording "constituted an express provision for statutory arbitration.... [thereby] fall[ing] within the purview of section 7302 of the Act, and the 'contrary to the law' scope of review." *Bowdren*, 591 A.2d at 754. Once the court correctly determined that the language in question expressed a desire for statutory arbitration, it erroneously jumped to the conclusion that § 7302 with its "contrary to the law" language automatically applied. Rather, § 7302(d) *only* applies in the two situations explained in § 501(b) of Act 1980.

Furthermore, if *Bowdren* were correct, then any arbitration clause which clearly provides for statutory arbitration would fall within the wide standard of review provided by § 7302. If this were true, then there would be no reason for § 7314 and its stricter standard of review over arbitration awards. Moreover, such a reading would defeat the purpose of arbitration, which is to relieve the judicial system of cases which can be adequately decided by arbitration. Reviewing every legal determination and decision made by arbitrators would frustrate this very purpose.

Finally, Plaintiff's argument that the analysis (or lack of it) in *Bowdren* shows an intent by the court to reject the reasoning of *Popskyj* is unpersuasive. Plaintiff's brief at 10. To the contrary, *Popskyj* was cited with approval by *Dearry v. Aetna Life & Casualty Insurance Company*, 415 Pa.Super. 634, 610 A:2d 469, 472–473 (Pa.Super.1992). Therefore, this court does not read *Bowdren* as controlling authority for the question before it, and accepts the reasoning and classifications put forth by *Popskyj*. And under *Popskyj*, the policy in the captioned case is not within the purview of the three prongs triggering § 7302(d) and is thus governed by the stricter standard of § 7314.

## III. Application of Standard of Review

Plaintiff asserts several errors which it maintains require that the arbitrators' award be vacated. First, Aetna argues that the arbitrators disregarded the consent-to-settle clause included in the policy between Plaintiff and the decedent. This clause provided: "We do not provide uninsured/underinsured motorist coverage for bodily injury sustained by any person: ... (2) If that person or legal representative settles the bodily injury claim without our consent." Exhibit D of Plaintiff's brief. Plaintiff thus asserts that it has no liability for underinsured motorists coverage since Defendants failed to notify Aetna and gain their consent for their settlement with Deiter.

Second, Plaintiff contends that the arbitrators' consideration of two issues—the consent-to-settle clause and the prejudice to Aetna from failure to comply with this clause—was erroneous. Plaintiff argues that the arbitration clause limited arbitration to two issues: "(A) Whether the Claimant is legally entitled to recover damages from the tortfeasor, or (B) The amount of payment that may be owed under the insurance policy." Plaintiff's brief at 17. Therefore, maintains Plaintiff, the arbitrators wrongly decided issues which they were not empowered to consider.

Third, Plaintiff argues that the arbitrators erred in refusing to stay the arbitration hearing upon good cause in contravention of 42 Pa.Cons.Stat.Ann. § 7314(a)(1)(iv). Plaintiff asserts that on May 30, 1990, counsel for Deitrich offered Aetna the opportunity to prosecute a third party action against Kotkiewicz (the driver of the car which hit the automobile in which the decedent was riding). Plaintiff's brief at 20. On June 1, 1990, Plaintiff accepted this offer, and retained an attorney; however, Plaintiff alleges that Deitrich has failed to authorize Plaintiff's coun-

sel to prosecute this action. Plaintiff's brief at 20. Therefore, Plaintiff requested the arbitrators to stay the arbitration hearing pending the resolution of this third party action. Plaintiff's brief at 20.

■ Because the arbitration clause at issue before the court falls within the purview of § 7314, not § 7302(d), this court may only review the arbitration award under the narrower standard of the former:

§ 7314. Vacating award by court

(a) General rule—

(1) On application of a party, the court shall vacate an award where:

(i) the court would vacate the award under section 7341 (relating to common law arbitration) if this subchapter were not applicable

. . . .

(iii) the arbitrators exceeded their powers;

(iv) the arbitrators refused to postpone the hearing upon good cause being shown therefore or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 7307 (relating to hearing before arbitrators), as to prejudice substantially the rights of a party; or

. . . .

(2) the fact that the relief awarded by the arbitrators was such that it could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award.

### A. *Common Law Principles*

■ Under § 7314(a)(1)(i), an arbitrators' award may be vacated if, under common law principles (set out in § 7341), it would be vacated. Under common law, the arbitrator is the final judge of both law and fact, and so mistake of either does not require vacating the judgment. *Elkins & Co. v. Suplee,* 371 Pa.Super. 570, 538 A.2d 883, 806 (1988); *Hassler v. Columbia Gas Transmission Corp.,* 318 Pa.Super. 302, 464 A.2d 1354, 1356 (1983). Common law arbitration awards "may not be vacated or

modified absent a clear showing that a party was denied a hearing or that fraud, corruption, or other irregularity caused the issuance of an unjust, inequitable, or unconscionable award. 42 Pa.Conn.Stat.Ann. § 7341." *Elkins,* 538 A.2d at 886.

■ All of plaintiffs' allegations regarding the erroneous decisions of the arbitrators are allegations that the arbitrators made mistakes of law. Plaintiff asserts that the arbitrators disregarded an allegedly valid consent-to-settle clause and that the arbitrators wrongly considered issues outside of those permitted to be decided by arbitration. Apart from a claim that these actions exceeded the arbitrators' powers, a claim to be discussed herein, the fact that these decisions may constitute legal errors is insufficient to permit review of the award by this court under the first prong of § 7314.

### B. *Exceeding Powers*

Under § 7314, an arbitration award may be vacated if the arbitrators exceeded their powers. Plaintiff asserts that the arbitrators did exceed their powers by rewriting the insurance policy to delete the "consent to settle" exclusion. Plaintiff's brief at 10 n. 2.

■ What the arbitrators actually did was to interpret the consent-to-settle clause, and the legal requirements of that clause, in a manner contrary to the interpretation that Plaintiff wishes to give it. To label an interpretation of a provision a "modification" merely because one party is in disagreement with it would, in effect, result in all disputed interpretations being the grounds for vacating an award due to arbitrators exceeding their powers. Moreover, merely misinterpreting a clause in an agreement does not, according to case law, rise to the level of exceeding arbitrators' powers.

As the court in *Leechburg Area School District v. Leechburg Education Association,* 475 Pa. 413, 380 A.2d 1203, 1205 (1977)[1] explained:

---

1. *Port Authority of Allegheny County v. Amal-* *gamated Transit Union,* 492 Pa. 494, 424 A.2d

If we allowed a claim of improper interpretation of an agreement to fall under the category of "exceeded powers," binding arbitration would be a useless procedure. The determination of whether an arbitrator 'exceeded proper powers' depends upon whether the arbitrator decided a dispute over which he had no jurisdiction, or granted an award which is prohibited by law.

The claim that a court should interpret an agreement differently than did the arbitrators would convert binding arbitration into "unbinding" arbitration. If binding arbitration has any meaning, the arbitrator must be considered the court of last resort except in the very limited categories specified in the Act of 1927.

(emphasis added).

In *West Jefferson Hills School District v. Jefferson Federation of Teachers*, 61 Pa.Cmwlth. 374, 433 A.2d 643 (1981), a collective bargaining agreement provided for specified time periods when employees could apply for vacant positions. *Id.* 433 A.2d at 644. The aggrieved teacher had submitted an application for a vacancy which was later filled by an employee who had not timely applied. *Id.* at 644. The teacher filed a grievance, arbitration was held, and the employee was granted relief. *Id.* The school district then argued that the arbitrator had wrongly modified the district's right to fill the vacancy with whomever it selected. *Id.* The appellate court determined that the arbitrator did not modify the district's right, but merely interpreted it, and further noted that even if the arbitrator misinterpreted this right, that such an error did not rise to the level of a modification or an expansion of powers

so as to avoid the finality of arbitration. *Id.* at 645. *See also Trinity Area School Dist. v. Trinity Area Ed. Ass'n*, 49 Pa. Cmwlth. 379, 412 A.2d 167, 168 (1980) (arbitrator did not exceed power in misinterpreting agreement);[2] *Leechburg Area School Dist.* 380 A.2d at 1204 (same).

Plaintiff also asserts that the arbitrators exceeded the scope of their powers in considering two issues—consent to settle, and prejudice. Plaintiff argues that the policy's arbitration clause only permitted arbitration about two separate issues: the claimant's entitlement to damages, and the amount owed under the policy. Plaintiff's brief at 17.

*Brennan v. General Accident Fire and Life Assurance Corp.*, 524 Pa. 542, 574 A.2d 580 (1990) established a very broad scope for the jurisdiction of the arbitration panel. That court explained:

On a previous occasion, our superior court has held that once it is determined that a substantive dispute is arbitrable, normally the arbitrator has the authority to decide all matters necessary to dispose of the claim. *Giant Markets, Inc. v. Sigma Marketing Systems, Inc.*, 313 Pa.Super. 115, 459 A.2d 765 (1983). We agree with our superior court and find this dispositive of appellant's claim. It is settled law in Pennsylvania that unless restricted by the submission, the arbitrators are the final judges of law and fact and their award will not be disturbed for mistake of either.

*Id.* 524 Pa. at 550, 574 A.2d 580. *See also Nationwide Mut. Ins. Co. v. Pitts*, 400 Pa.Super. 269, 583 A.2d 489, 491 (1990).[3]

---

1299, 1301 n. 3 (1981) purports to disregard *Leechburg* as precedent. However, as *Port Authority* only cites *Leechburg* in regard to the categories available to vacate an arbitrator's award, this court will consider the *Leechburg* analysis concerning the parameters of "excess of power."

2. Though this case was decided under the 1927 Act, that law, like § 7314 at issue, provided that an award should be vacated if the arbitrator exceeded his or her powers.

3. Plaintiff asserts that *Fisher v. U.S.A.A. Casualty Insurance Co.*, 778 F.Supp. 232, 235 (E.D.Pa.

1991) concluded that the enforceability of a consent-to-settle provision is to be determined in a judicial, not arbitration forum. The Third Circuit reversed in *Fisher* and instructed the district court on remand to determine in which forum the consent-to-settle issue should be decided, in light of several recent cases which had clarified (and broadened) the scope of the issues properly considered by arbitration. *Fisher v. U.S.A.A. Cas. Ins. Co.*, 973 F.2d 1103 (3d Cir. 1992) (citing *Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 46 (3d Cir.1991) (arbitration clause [substantially the same as one in captioned case] includes dispute over whether claimant

■ The policy at issue stated that arbitration could be used to decide whether the claimant could recover any damages, and, if so, what the extent of these damages would be. Whether the consent-to-settle clause precluded the claimant from recovering was an initial decision that the arbitrators had to make to determine whether Defendants could recover any damages. To decide this consent-to-settle issue, the arbitrators had to decide whether Aetna was prejudiced by the settlement to which they did not consent. Both questions were necessarily decided in determining whether Defendants could recover under the policy with Aetna. Therefore, the arbitrators did not exceed their powers in considering these issues.

### C. *Refusing to Postpone Arbitration Hearing*

An arbitration award may be vacated under § 7314(a)(1)(iv) if the arbitrators have refused to postpone an arbitration hearing upon the showing of good cause. Plaintiff argues that the arbitrators did just this—that they failed to stay the arbitration hearing pending the resolution of a third party claim. Plaintiff's brief at 20.

■ Underinsured motorist claims may be litigated even if a third party case has not yet been resolved.[4] For example, *Rocca v. Pennsylvania General Insurance Co.*, 358 Pa.Super. 67, 516 A.2d 772 (1986), *allocatur denied*, 517 Pa. 594, 535 A.2d 83 (1987), involved a situation quite similar to the one at bar. In that case, Ms. Rocca settled with the driver of the automobile which hit her vehicle; she then sought underinsured motorist coverage through her carrier. *Id.* 516 A.2d at 773. She demanded arbitration when the company refused the claim. The trial court, agreeing with the company, determined that arbitration would be premature as Ms. Rocca had not

yet exhausted her claims against insured tortfeasors, specifically, the driver of the vehicle in which she was riding. *Id.* The Superior Court reversed this decision, concluding that it is up to the arbitrators to determine whether the policy requirement of exhausting the claimant's remedies had been met. *See also Snyder v. Nationwide Mut. Ins. Co.*, 373 Pa.Super. 294, 541 A.2d 19, *allocatur denied*, 520 Pa. 590, 551 A.2d 216 (1988) (arbitration not premature merely because suit against third party pending). Like *Rocca* and *Snyder*, the policy in the captioned case contained no limitation that arbitration could not proceed until all third party actions had been resolved.

■ The rule that arbitration may go forward even if third party claims are pending would be effectively nullified if all awards resulting from such arbitration could be vacated on the basis that the arbitrators failed to postpone the arbitration hearing for good cause. Therefore, the existence of pending third party actions can not constitute "good cause." Consequently, Plaintiff has no grounds for requesting that Defendants' arbitration award be vacated due to the arbitrators' failure to postpone the hearing.

### IV. Application of Rule 12(b)(6) Standard

The arbitration award at issue is to be reviewed under a narrow standard, as required under § 7314. Under this standard, (1) errors of law do not constitute grounds for vacating this award; (2) actions of the arbitrators in the captioned action do not exceed the scope of their duties; and (3) the arbitration hearing was not wrongly held in the face of alleged good cause. Therefore, there are no grounds for vacating the arbitrators' award. Even taking all the facts which Plaintiff asserts as true, and viewing these facts in the light most

---

entitled to underinsurance coverage when liability benefits already paid); *McAlister v. Sentry Ins. Co.*, 958 F.2d 550, 554 (3d Cir.1992) (arbitration clause encompassed determination whether claimant an "insured" under policy)).

4. As there appears to be no Pennsylvania Supreme Court pronouncement on this issue, this court will look to the appellate courts, and their

decisions on this issue. See *Adams v. Cuyler*, 592 F.2d 720, 725 n. 5 (3d Cir.1979), *aff'd*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981) (in absence of decision by state's highest court, federal courts can consider rulings of intermediate appellate courts to determine how highest court would decide).

favorable to Plaintiff, there is no legal theory which would support Plaintiff's claim. For this reason, Plaintiff's complaint must be dismissed. An order will be so issued.

V. Confirmation of Arbitrators' Award

42 Pa.Cons.Stat.Ann. § 7314(d) provides: Confirmation of Award.—If an application to vacate the award is denied, and no application to modify or correct the award is pending, the court shall confirm the award.

Defendants cite 42 Pa.Cons.Stat.Ann. § 7314(d) in their request that this court affirm the award of the arbitrators. If this court were to decide on the merits the Plaintiff's application to review and/or vacate the award of the arbitrators, then a denial to vacate would, under this section, result in an affirmation of the underlying award. However, as this court has only considered the Plaintiff's application under a Rule 12(b)(6) review, and will dismiss this application, not deny it, affirmation of the award is not warranted.